1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10   DOUGLAS H.,

11                     Plaintiff,                CASE NO. 2:25-cv-00988-GJL

12        v.                                     SOCIAL SECURITY DISABILITY
                                                 APPEAL ORDER
13   COMMISSIONER OF SOCIAL
     SECURITY,

14                     Defendant.

15

16        This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local

17   Magistrate Judge Rule 13. *See also* Consent to Proceed Before a United States Magistrate Judge,

18   Dkt. 4. This matter has been fully briefed. *See* Dkts. 12, 14, 15.

19        Having considered the administrative record (AR) and all memoranda, the Court

20   concludes the Administrative Law Judge (ALJ) erred in finding Plaintiff not disabled.

21   Accordingly, this matter is **REVERSED** and **REMANDED** for **CALCULATION** of an

22   **AWARD of BENEFITS**.

23

24

SOCIAL SECURITY DISABILITY APPEAL ORDER - 1

1

## I.    PROCEDURAL HISTORY

Plaintiff's applications for Supplemental Security Income (SSI) benefits and Disability Insurance Benefits (DIB) were denied initially and following reconsideration. AR 105–82. ALJ Gordon Griggs held a hearing on Plaintiff's applications in December 2013 (AR 43–75) and issued a decision in July 2014 (AR 183–206) which was subsequently reversed by the Appeals Council in June 2016 (AR 207–10). ALJ Griggs held another hearing in November 2016 (AR 76–104) and issued a decision in February 2017 (AR 10–37) which was subsequently reversed on appeal to this Court by U.S. District Judge Benjamin Settle (AR 1630–63). On remand, ALJ Eric Basse held a hearing in April 2019 (AR 1560–63) and issued a decision in June 2019 (AR 1669–95) which was reversed by the Appeals Council in May 2020 (AR 1696–1702).

ALJ Glenn Meyers ("the ALJ") held another hearing on March 9, 2021. AR 1564–92. He issued a decision on March 31, 2021. AR 1528–59. Over four years later, in April 2025, the Appeals Council declined to consider Plaintiff's exceptions to the ALJ's decision, making the ALJ's decision the Commissioner's final decision subject to judicial review. AR 1508–13. On May 29, 2025, Plaintiff filed a Complaint in this Court seeking judicial review of the ALJ's decision. Dkt. 4. Defendant filed the sealed AR in this matter on July 28, 2025. Dkt. 7.

## II.    BACKGROUND

Plaintiff was born in 1973 and was 36 years old on June 3, 2011, his alleged date of disability onset. *See* AR 1531, 1547. Plaintiff has at least a high school education. AR 1547. According to the ALJ, Plaintiff suffers from, at a minimum, the severe impairments of right knee meniscal tear, statuspost arthroscopic repair; neurogenic motor changes of upper extremities; right rotator cuff tendinopathy; asthma; degenerative disc disease; major depressive disorder; anxiety disorder; personality disorder; attention-deficit hyperactivity disorder (ADHD); and

posttraumatic stress disorder (PTSD). AR 1534. However, the ALJ found Plaintiff had the

following Residual Functional Capacity (RFC):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with some additional limitations. The claimant is able to remember, understand, and carry out simple and routine instructions and tasks consistent with the learning and training requirements of SVP level one and two jobs. He cannot reach overhead and can frequently reach at or below shoulder level. The claimant can frequently handle and finger. He can have no contact with the public. The claimant is capable of working in proximity to but not in coordination with co-workers. He can have occasional contact with supervisors. The claimant can occasionally stoop and never crouch, crawl, kneel, or climb ramps, stairs, ropes, ladders, scaffolds. He must avoid concentrated exposure to dust, smoke, fumes, chemicals, and pulmonary irritants and must avoid moderate exposure to vibrations and hazardous conditions.

AR 1537. Based on this RFC, the ALJ found Plaintiff could perform work existing in significant

numbers in the national economy. AR 1547–48.

### III.    DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

benefits if, and only if, the ALJ's findings are based on legal error or not supported by

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

In his opening brief, Plaintiff contends the ALJ erred in assessing the medical opinion

evidence and his subjective symptom testimony. *See* Dkt. 12.

As an initial matter, as Plaintiff points out throughout his brief, some of the ALJ's

discussion of Plaintiff's testimony and the medical opinion evidence relied upon the same

reasoning as that rejected in Judge Settle's previous order in this matter. *See generally id.* "[T]he

law of the case doctrine . . . appl[ies] in the social security context." *Stacy v. Colvin*, 825 F.3d

563, 567 (9th Cir. 2016). It "generally prohibits a court from considering an issue that has

already been decided by that same court or a higher court in the same case." *Id.* (citing *Hall v.*

*City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). The Court therefore will not revisit

issues which were resolved by Judge Settle's previous order.

### A.    Subjective Symptom Testimony

Plaintiff testified he cannot be around large groups of people without discomfort, anxiety,

and hypervigilance; that he is prone to anger which can be triggered by irritations from noise,

remarks, and glances from others, and which can result in physical and verbal confrontation; and

that he has some difficulties with memory and concentration. *See* AR 59–60, 87–90, 1579–82.

Where (as is the case here) the ALJ finds Plaintiff has presented evidence of one or more

impairments which could be reasonably expected to cause his alleged symptoms and there is no

affirmative evidence of malingering, the ALJ must give specific, clear, and convincing reasons

for discounting Plaintiff's testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (citing *Smolen*

*v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

Much of the ALJ's discussion of Plaintiff's testimony mirrors the same discussion that

was rejected by Judge Settle. *Compare e.g.*, AR 1539 (ALJ rejecting Plaintiff's testimony based

on, *inter alia*: evidence he controlled his anger at times, his anger was caused by situational

aggravators, his purported avoidance of work to receive disability benefits, and inconsistencies

related to using a car) *with* AR 1637–44 (Judge Settle rejecting same rationales).

The Commissioner defends only two of the ALJ's reasons for rejecting Plaintiff's

testimony, neither of which was addressed by Judge Settle: (1) inconsistencies between

Plaintiff's physical allegations and physical examinations, and (2) Plaintiff's activities of

traveling and performing freelance photography. *See* Dkt. 14 at 2–4.

As to the first reason, Plaintiff has challenged only the ALJ's assessment of his mental

symptom testimony. *See* Dkt. 12 at 4–5. Plaintiff's physical functioning on examination is not a

rationale which is specific to that testimony, so it is not an adequate basis for rejecting it. *See Smith v. Kijakazi*, 14 F.4th 1108, 1112–13 (2021) (finding ALJ erred in discrediting all of claimant's testimony based on inconsistencies "only clearly applicable to the late-period testimony").

As for Plaintiff's travel and freelance photography, an ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Plaintiff traveled twice during the decade-long relevant period due to family issues. *See* AR 2427, 3256. But he testified that, for at least one of these trips, he continued to experience symptoms related to being in public although he was only able to mitigate, and not resolve, his aggravations that occurred throughout his travels including his difficulties functioning in public (*e.g.*, by using rideshare services). *See* AR 1574–75. And even if this were not so, the ability to travel due to family necessity twice over a decade hardly contradicts claims of debilitating symptoms from social interactions. *Cf. Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives[.]").

Similarly, Plaintiff's submission of a photograph to an online stock photo company (*see* AR 2711) did not appear to involve any social interaction or involve the sustained task requirements of a work environment.

In sum, the ALJ's reliance upon isolated public encounters was insufficient and failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony. Defendant does not contend such an error was harmless, so the Court reverses. *See Ferguson v. O'Malley*, 95 F.4th 1195, 1204 (9th Cir. 2024) ("The Commissioner does not contend that the ALJ's error was harmless. Consequently, we reverse the judgment …").

**B.    Medical Opinion Evidence**

Plaintiff challenges the ALJ's assessment of the medical opinions of five examining

sources: Paul Connor, PhD (rendered March 2013, AR 714–23); Wayne Dees, PsyD (October

2012, AR 550–58); Tasmyn Bowes, PsyD (September 2016, AR 2368–82); J. Alex Crampton,

PsyD (September 2018, AR 2546–50); and Danielle Jenkins, PsyD (October 2014, AR 2363–

67).

Under the regulations applicable to this case, an examining physician's opinion is

generally "entitled to greater weight than the opinion of a non-examining physician." *Lester v.*

*Chater*, 81 F.3d 821, 830–31 (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1). Opinions

of examining sources can only be rejected "for specific and legitimate reasons that are supported

by substantial evidence in the record." *Lester*, 81 F.3d at 830–31.[1]

Dr. Connor opined Plaintiff had "significant neuropsychological impairment" in the areas

of "focusing and maintaining attention as well as impulsivity and difficulties with inhibiting

responses." AR 719. He also noted Plaintiff "may experience greater troubles with memory and

problem solving" and impulsivity. AR 720.

Drs. Dees, Bowes, Crampton, and Jenkins opined Plaintiff had marked or severe

limitations in the following areas: performing within a schedule, maintaining attendance, and

being punctual; maintaining appropriate behavior; setting realistic goals and planning

independently; communicating and performing effectively; and completing a normal workday

and workweek without psychological interruptions. *See* AR 552–53, 2365, 2372, 2548. All

sources except Dr. Bowes opined Plaintiff had at least a marked limitation in adapting to

---

[1] This standard does not apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1527, 404.1520c; *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

changes. *See* AR 552–53, 2365, 2548. Dr. Crampton opined Plaintiff had several other marked and severe limitations, including in making simple decisions and performing tasks without special supervision. *See* AR 2548.

In support, the sources described severe symptoms of anxiety and depression, along with paranoia and hallucinations. Dr. Connor observed Plaintiff had an irritable demeanor, was agitated, had troubles with appropriate social interaction, and required some redirection. AR 718–19. He said Plaintiff's performance on one test "indicat[ed] troubles with impulsivity" and "focusing and maintaining attention;" other tests indicated "severe levels of psychological distress." AR 718, 719.

Drs. Dees, Crampton, and Jenkins observed abnormal thought process and content, orientation, perception, and fund of knowledge. AR 554, 2550, 2366–67. Drs. Bowes, Crampton, and Jenkins noted scores on anxiety and depression index tests indicating severe anxiety and depression. *See* AR 2370, 2549, 2366. Dr. Bowes conducted a personality assessment inventory: the results "support[ed] an extreme level of reported subjective experience of overall distress," along with "clinically significant problem[s]" in Plaintiff's affect, acting out, health problems, psychotic features, and social withdrawal. AR 2370.

The ALJ found these opinions unpersuasive, relying on similar reasons for rejecting them. *See* AR 1542–45. The ALJ found the opinions inconsistent with some evidence showing Plaintiff had a "normal mood and affect, average cognitive functioning, normal behavior, and cooperative attitude." AR 1544 (rejecting opinions of Drs. Bowes, Crampton, and Jenkins, citing AR 567–68, 585, 620, 854, 863, 907, 910, 912, 1020–21, 1052, 1063, 1091, 1370, 1393, 1404–05, 2394, 2631, 2801, 3077–78, 3124, 3126, 3130, 3136, 3139, 3141, 3143, 3161, 3163, 3166,

1    3285, 3314, 3339, 3361); *see also* AR 1542–43 (rejecting opinions of Drs. Connor and Dees on

2    similar basis, citing the same evidence).

3         Judge Settle found similar reasoning, made with respect to Plaintiff's subjective

4    testimony, in a previous denial decision was:

5            not a reasonable interpretation of the evidence. In analyzing the medical evidence,
     the ALJ "cannot simply pick out a few isolated instances" of medical heath that
6            support his conclusion, but must consider those instances in the broader context
     "with an understanding of the patient's overall well-being and the nature of [his]
7            symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). Here, the ALJ
     acknowledged medical evidence of [Plaintiff's] mental health issues, such as
8            anxiety and anger, but downplayed them because [Plaintiff] was cooperative with
     his providers at times and did not have any obvious crises due to his anger issues.
9            [AR 21–22]. The record is replete with evidence of ongoing psychological issues,
     however. [Plaintiff's] providers regularly noted that he was anxious, depressed, and
10           had a blunted affect. *See, e.g.*, [AR] 512, 515, 522, 525–26, 567, 573, 611, 620,
     692, 707, 785, 1167, 1173.

11   AR 1637–38. Judge Settle also found there was evidence supporting impulsivity and anger-

12   related issues in the record which undermined findings to the contrary. AR 1638 (citing AR 512,

13   913).

14        Evidence from after Judge Settle's decision confirms the same: although the evidence

15   identified by the ALJ reveals normal findings related to mood and affect, other records show

16   Plaintiff was often observed to be angry, anxious, and irritable. *See, e.g.*, AR 2695, 2700, 2709,

17   2747, 2759, 2765, 2771, 2791, 3124, 3128, 3133, 3136, 3143, 3163, 3188, 3197, 3204, 3233,

18   3239. There were also further incidents confirming Plaintiff's propensity to anger and difficulties

19   with impulsivity. *See* AR 3145 (angry outbursts leading to ban from certain health facilities).

20        The ALJ's failure to address the evidence contrary to his finding and explain why that

21   evidence was insufficiently probative as to Plaintiff's functioning was error. As Judge Settle

22   noted, the ALJ must consider the broader context of the entire record. *See Attmore*, 827 F.3d at

23   877. One who is substantially affected by depression, impulsivity, and anger would not be

24

1   expected to constantly be depressed, impulsive, and angry. Rather, "cycles of improvement and

2   debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ

3   to pick out a few isolated instances of improvement over a period of months or years and to treat

4   them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017.

5          The ALJ found inconsistent with the opinions evidence that Plaintiff was noted to have

6   interacted with others appropriately at several group physical therapy sessions. AR 1542, 1543,

7   1544; *see also* AR 1536 (noting the same, citing AR 3066–74, 3079). The ALJ's reliance upon

8   four group physical therapy sessions where Plaintiff appropriately interacted with others suffers

9   from the same flaw as his assessment of Plaintiff's presentation at other appointments—it failed

10  to consider the many appointments in which Plaintiff did not interact appropriately and displayed

11  symptoms consistent with anger, impulsivity, and irritability.

12         The ALJ also found Plaintiff's travel and photography activities inconsistent with these

13  opinions. *See* AR 1542–45. However, for the same reasons that these activities were not

14  reasonably found inconsistent with Plaintiff's testimony, these activities are not legitimate bases

15  for rejecting the examining sources' opinions.

16         The ALJ found the opinions of Drs. Dees and Connor unsupported: he noted that Dr.

17  Connor's opinion did "not document functional barriers that would preclude all employment"

18  while Dr. Dees failed to provide any narrative explanation of his opinion. *See* AR 1542, 1543.

19         As discussed, all the opinions included abnormal observations and discussed the results

20  of relevant testing. Although Dr. Connor observed many normal results in the 15 tests he

21  administered (*see* AR 718–19), this is not a reason to find as less probative the abnormal results

22  he described. Although Dr. Dees did not provide a specific function-by-function explanation of

23  his opinion, his opinion included a clinical interview (AR 550–51), clinical findings describing

24

the severity of Plaintiff's symptoms (AR 551), and a mental status examination describing

abnormal findings (AR 553–54). "[A]n opinion cannot be rejected merely for being expressed as

answers to a check-the-box questionnaire[.]" *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020)

(citing *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017)).

Finally, the ALJ discounted all five examining sources' opinions because they had not

reviewed the longitudinal record. *See* AR 1542–45. As Judge Settle noted, this is not a legitimate

reason for rejecting an examining doctor's opinion, since the "regulations place more weight on

opinions from doctors who examine claimants than those who simply review medical records."

AR 1653 (citing 20 C.F.R. § 404.1527(c)(1), *Lester*, 81 F.3d at 830–31).

In sum, the ALJ failed to provide specific and legitimate reasons for discounting the

opinions of examining sources Drs. Connor, Dees, Bowes, Crampton, and Jenkins. Because

those opinions suggest Plaintiff would be further limited than found in the RFC, this error was

not inconsequential to the disability determination and therefore was not harmless. *See Stout v. v.

Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

Plaintiff also argues the ALJ failed to provide germane reasons for rejecting the opinion

of his therapist, Bryant Christlieb, LMFT. Dkt. 12 at 22–23. Having found the ALJ reversibly

erred, the Court need not consider this argument.

**C.    Remedy**

The Court "generally remand[s] for an award of benefits only in 'rare circumstances.'"

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (quoting *Moisa v.

Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004)). A remand for award of benefits is proper only if

> (1) the record has been fully developed and further administrative proceedings
> would serve no useful purpose; (2) the ALJ has failed to provide
> legally sufficient reasons for rejecting evidence, whether claimant testimony or

medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. A remand for an award of benefits is appropriate only if, reviewing the record as a whole, the improperly discredited evidence would leave no doubt Plaintiff would be found disabled on remand if that evidence was credited as true. *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017).

The first two elements of the credit-as-true test are easily satisfied. First, the record is over 3,400 pages in length and contains fourteen medical opinions and the transcripts of four hearings; there is no contention that it is incomplete. *See Revels v. Berryhill*, 874 F.3d 648, 668–69 (9th Cir. 2017) (finding record developed where it contains two treating medical opinions, function reports, and over fifty treatment notes); *Trevizo*, 871 F.3d at 683 (first element satisfied by "extensive" record of "hundreds of pages," claimant testimony, VE testimony, and a medical opinion). Indeed, Plaintiff's date last insured, for the purposes of his DIB claim, is in September 2012. AR 1531–32. Further evidence related to Plaintiff's disability thirteen years ago is unlikely to be forthcoming. Moreover, Ninth Circuit "precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualified as a remand for a 'useful purpose' under the first part of the credit-as-true analysis." *Garrison*, 759 F.3d at 1021–22 (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) and *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004)).

Second, the Court has found the ALJ erred in assessing the opinions of five examining sources and in assessing Plaintiff's subjective symptom testimony.

Turning to the third element, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. The five improperly discredited opinions of examining sources, if credited as true, must be given more weight than the contrary

medical opinions of non-examining sources. *See Lester*, 81 F.3d at 830; 20 C.F.R. § 404.1527(c)(1). The Court therefore considers whether these opinions, along with Plaintiff's testimony, would compel a finding of disability. *See Leon*, 880 F.3d at 1045.

The Vocational Expert testified that an individual would be found disabled if he repeatedly engaged in aggressive and threatening behavior; had more than one absence per month; left his job site during his shift; or was off task more than 15% of the time or had a like reduction in pace. *See* AR 1588–89.

It is difficult to imagine an RFC assessment consistent with the improperly discredited evidence which did not include at least one of these work-prohibitive limitations.

Drs. Dees, Bowes, Crampton, and Jenkins opined Plaintiff had at least a marked limitation in performing activities within a schedule, maintaining attendance, and being punctual, as well as in completing a normal workday and workweek without psychological interruptions. *See* AR 552–53, 2365, 2372, 2548. A "marked limitation" means the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. § 404, Supb. P, App'x 1, 12.00(F)(2)(d). A serious limitation in the ability to perform activities within a schedule, maintain attendance, and be punctual, coupled with a serious inability to complete a workday or workweek without psychological interruptions, would likely result in at least one absence per month, would require Plaintiff to leave his jobsite during his shift, or would otherwise result in Plaintiff being off task more than 15% of the time.

Plaintiff also testified he has angry outbursts easily triggered by normal characteristics of a workplace settings. *See* AR 59, 87, 1579–80. Drs. Dees, Bowes, Crampton, and Jenkins found he had at least marked limitations in maintaining appropriate behavior and communicating. *See* AR 552–53, 2365, 2372, 2548. Dr. Connor's discussion of Plaintiff's impulsivity is consistent

with such limitations. AR 719–20. Crediting such evidence compels a finding that Plaintiff would engage in the sort of aggressive and threatening behavior the VE testified would be work-prohibitive. For these reasons, the improperly discredited evidence would, if credited as true, compel a finding of disability.

As Defendant notes, the Court may decline to remand for an award of benefits where the record discloses "serious doubt" that the claimant is disabled. *See* Dkt. 14 at 11; *Garrison*, 759 F.3d at 1023. But Defendant identifies no basis to find the record creates serious doubt of disability, and the Court has not discerned one from its independent review. Although the record contains two medical opinions of non-examining sources which are less restrictive than the examining sources' opinions (*see* AR 1542–43), the examining sources' opinions are given greater weight in the disability analysis, *see* 20 C.F.R. § 404.1527(c)(1). And although the record contains some normal findings on examination, as discussed, this does not necessarily raise serious doubt as to Plaintiff's disability, as mental impairments are oftentimes cyclical and can impair some areas of function significantly without touching others.

Finally, "inequitable conduct on the part of the Commissioner can strengthen, though not control, the case for" an award of benefits. *Garrison*, 759 F.3d at 1019. The Court may consider "equitable concerns about the length of time that had elapsed since the claimant had filed [his] application." *Treichler*, 775 F.3d at 1100 (citing *Varney v. Sec'y of Health & Hum. Servs.*, 859 F.2d 1396, 1398–99 (9th Cir. 1988)); *see also Trevizo*, 871 F.3d at 683 (considering "exceptional facts" such as seven year delay and "extensive medical needs requiring significant care").

Here, Plaintiff filed his applications over thirteen years ago. *See* AR 13. After Judge Settle reversed the second ALJ decision in this matter, the Appeals Council reversed the third ALJ decision because it failed to comply with Judge Settle's Order. *See* AR 1698–70. The fourth

ALJ decision reviewed by this Court, as discussed, also largely relied upon the same rationale rejected by Judge Settle. And although Plaintiff filed exceptions to that decision in April 2021 (*see* AR 1866–72), the Appeals Council did not decline to consider those exceptions until four years later (AR 1508) due to an apparent administrative error. *See* AR 1859 (initially indicating exceptions had not been received).

Such a procedural history strengthens Plaintiff's case for an award of benefits. Given the Commissioner's repeated reliance upon the same reasons Judge Settle rejected, it also underscores the conclusion that further administrative proceedings would be unlikely to serve a useful purpose in this case, and that "[a]llowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke*, 367 F.3d at 887.

For these reasons, this case presents the rare circumstance in which a direction to award benefits is appropriate.

### IV.   CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for **CALCULATION** of an **AWARD of BENEFITS**.


Dated this 27th day of October, 2025.


Grady J. Leupold
United States Magistrate Judge